**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No.  13-cv-01751-RM-CBS

STEAK N SHAKE ENTERPRISES, INC., and
STEAK N SHAKE, LLC,

     Plaintiffs,

v.

GLOBEX COMPANY, LLC,
SPRINGFIELD DOWNS, INC.,
CHRISTOPHER BAERNS,
LARRY BAERNS,
KATHRYN BAERNS, and
CONTROL, LLC,

     Defendants.

_____

**ORDER RE
DEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER
(ECF NO. 29)**
_____

     THIS MATTER comes before the Court on Defendants' second Motion for a Temporary Restraining Order ("Motion") (ECF No. 29) filed August 13, 2013.  A prior motion for a temporary restraining order ("TRO") was denied by the Court on August 9, 2013 after notice to the parties and a hearing.  A telephonic hearing was held on the second Motion on August 14, 2013 where the Court heard arguments of counsel.  Based on the Motion, the arguments made at the August 9 and 14, 2013 hearings, and the following reasons, the Court grants the Motion in part and denies the remainder as set forth below.

**I.  PROCEDURAL BACKGROUND**

     As relevant to the Motion, Plaintiffs' lawsuit arises from Defendants Globex Company,

LLC's and Springfield Downs, LLC's (collectively, "Defendants") alleged breaches of certain written franchise and license agreements ("Agreements") which allowed Defendants to operate as Steak n Shake restaurants. Plaintiffs assert that, after providing Defendants notice of defaults and an opportunity to cure, they terminated these Agreements for cause, but Defendants continued to use Plaintiffs' name and marks and hold their restaurants out to the public as Steak n Shake restaurants.

Defendants' alleged breaches consisted of: (1) failing to use a $4 menu specified by Plaintiffs; (2) failing to display the required $4 menu marketing materials; (3) using different menus than those provided by Plaintiffs; and (4) charging customers prices that were far higher than the prices specified by Plaintiffs. (Amended Complaint [AC], ¶ 27.) Defendants could cure such breaches by offering the $4 menu to all customers and displaying all required marketing materials for the $4 menu. (AC, ¶ 28.)

Plaintiffs' lawsuit is premised on lawful terminations of the Agreements and seeks preliminary and injunctive relief and damages in reliance on that premise. Defendants deny any alleged breaches and the failure to cure any alleged breaches, and assert that Plaintiffs' terminations were unlawful and in breach of the Agreements. Defendants counterclaimed alleging the absence of breach and wrongful termination of the Agreements. Defendants further allege that Plaintiffs fraudulently induced Defendants to enter into the Agreements and breached such Agreements, and that Defendants are entitled to declaratory and injunctive relief.

After the filing of their lawsuit, Plaintiffs filed a motion for preliminary injunction which this Court has set for a hearing on August 23, 2013. Plaintiffs also took the following actions: (1) they shut down Defendants' point-of-sale ("POS") systems; (2) they instructed Defendants' sole

foodservice provider Sysco to refuse to ship proprietary Steak n Shake products to Defendants' restaurants and to refuse to offer Defendants a contract discount on nonproprietary products; and (3) they cut off Defendants' ability to access key internet, intranet, and office portals, namely, the Labor Scheduling Software, E Restaurant systems, Scoop Intranet database, and Insight (collectively, "Other Systems"). In response, Defendants filed the instant Motion.

## II. FACTUAL BACKGROUND

By letter dated June 18, 2013, Plaintiffs provided notice of default to Defendants, alleging they failed to adhere to the $4 menu, printed menus without Plaintiffs' consent, altered marketing materials, and charged prices higher that Plaintiffs' published menu prices. (Motion, Exhibit [Ex.] D.) By e-mail dated June 18, 2013, Defendants denied such allegations. (Motion, Ex. B-1.) By letter dated July 3, 2013, Plaintiffs notified Defendants that the Agreements were terminated effectively immediately. (Motion, Ex. E.)

Defendants presented evidence in the form of affidavits stating that the alleged violations were not occurring and that, in fact, Defendants could not charge prices higher than Plaintiffs' published menu prices because it was impossible to do so under Plaintiffs' POS systems. Further, by May 23, 2013, Plaintiffs had removed the POS systems' function which would have allowed Defendants to sell items a la carte to customers. (Motion, Ex. B and Ex. B-1 & B-3.) Defendants also presented evidence that:

> (1) the shutdown of Defendants' POS systems prevents Defendants from conducting the basic and fundamental operations of the restaurants, such as entering and communicating customer orders, ringing up correct prices, processing credit card transactions, and utilizing order confirmation screens. Among other things, Defendants are unable to timely

provide customer service, have angry and upset customers, and are experiencing labor problems such as loss of employees;

(2) the instruction to Sysco, Defendants' sole foodservice provider, to refuse to ship proprietary Steak n Shake products to Defendants' restaurants and to refuse to offer Defendants a contract discount on nonproprietary products prevents Defendants from offering Steak n Shake products, increases Defendants' cost of goods sold, and potentially requires Defendants to be subject to COD deliveries; and

(3) the cutoff of Defendants' ability to use the Other Systems detrimentally impacts Defendants' ability to operate their restaurants. Defendants are being prevented from accessing critical information concerning their businesses, such sales data, credit card and cash transaction details, payroll records and other labor information, and food cost and inventory data.

The net effect of Plaintiffs' actions is the removal of the systems, goods and labor Defendants need to operate their restaurants. Defendants estimate they have lost roughly 1,171 guests per store from August 8, 2013 through August 10, 2013. Defendants are now out of proprietary products. Under the current situation, it would be difficult if not impossible for Defendants to continue their business operations, much less as Steak n Shake restaurants. (Motion, *see* Affidavits of Mark Clark and Christopher Baerns.)

### III. ANALYSIS

The requirements for the issuance of a TRO are similar to those for the issuance of a preliminary injunction. *See, e.g.*, 13 J. Moore, *Moore's Federal Practice* 65.36(1), at 65-88 (3rd ed. 2013). The movant must establish: (1) it will suffer irreparable injury unless the injunction

issues; (2) the threatened injury outweighs any damage the proposed injunction may cause the opposing party; (3) if issued, the injunction would not be adverse to the public interest; and (4) it has a substantial likelihood of success on the merits. *E.g.*, *Oklahoma, ex rel., OK Tax Com'n v. International Registration Plan, Inc.*, 455 F.3d 1107, 1112-1113 (10th Cir. 2006).  Defendants have sufficiently done so in this instance.

First, Defendants have shown that unless this TRO is entered they will suffer irreparable injury, as it is certain and great that their restaurants will have to close or, to the extent they can be operational, be operated as something other than Steak n Shake restaurants.  For example, Defendants are - or shortly will be - out of proprietary food items for sale, are losing customers, have suffered and will likely continue to suffer loss of employees, and are suffering diminishment of their competitive positions in the marketplace.  *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263-1264 (10th Cir. 2004).

Next, the threatened injury to Defendants significantly outweighs any damage the proposed injunction may cause Plaintiffs.  Here, as previously stated, in light of Plaintiffs' actions, the potential closure of Defendants' restaurants is certain and great.  Plaintiffs' damage, if any, will be less.  Until Plaintiffs undertook the actions complained of, Defendants were operating as Steak n Shake restaurants.  Plaintiffs' allegations against Defendants are limited to pricing issues; for example, there are no allegations that Defendants are operating unsanitary restaurants or offering poor food products that would tarnish the image of Steak n Shake.  On the contrary, in that Defendants' restaurants remain operating under the Steak n Shake name, the Court finds that preventing Defendants from operating their restaurants smoothly, offering the use of credit cards, and offering Steak n Shake products causes not only damage to Defendants but also *more damage*

to Plaintiffs than if Defendants were allowed to continue to operate as before.

Third, the injunction would not be adverse to the public interest. Defendants employ approximately 160 individuals and generate in excess of $4,000,000 in annual gross revenue. (Motion, Ex. B, ¶ 22.) Allowing Defendants to temporarily operate their restaurants as they have been would be in the public interest.

Finally, the evidence that is currently before this Court is sufficient to establish a substantial likelihood of success on the merits. Plaintiffs' actions, and lawsuit, are premised on the lawful termination of the Agreements based on Defendants' alleged failure to following pricing and marketing policies. Defendants' affidavits present sufficient evidence, based on matters before the Court in the TRO papers, that the lawfulness of the termination is in dispute and, for the purposes of a TRO, to establish a substantial likelihood of success on the merits. By this determination, this Court is preserving the status quo existing between the parties prior to the controversy between them and not resolving the merits of the action between the parties.[1] Accordingly, it is

**ORDERED** that Plaintiffs shall take all steps to and shall immediately restore Defendants Globex Company, LLC's and Springfield Downs, LLC's access to the following computer systems: POS Systems; Labor Scheduling Software; E Restaurant systems; Scoop Intranet database; and Insight (collectively, "Computer Systems"); it is

---

[1] The Court has not conducted an evidentiary hearing with respect to the Motion and confines itself to the matters submitted with such Motion. To do otherwise would convert this Motion to a preliminary injunction which Defendants have not requested. Accordingly, the written declarations submitted by Plaintiffs following the hearing of this date do not change the Court's views. There remains sufficient evidence to establish a likelihood of success on the merits at the TRO stage.

**FURTHER ORDERED** Plaintiffs are prohibited from disabling any or all of the Computer Systems; it is

**FURTHER ORDERED** Plaintiffs shall take all steps to and shall immediately restore Defendants' access to the proprietary foodservice delivery from Sysco Systems and to offer Defendants a contract discount on nonproprietary products which were in effect prior to August 7, 2013; it is

**FURTHER ORDERED** Defendants shall be required to post a surety bond with the Clerk of the Court in the amount of $1,000.00 in order to secure the payment of any costs and damages that may be sustained by any party found to have been wrongfully restrained or enjoined; it is

**FURTHER ORDERED** the Motion is granted to the extent stated above and denied as to the remaining request for relief. This Order will be effective when Defendants post their surety bond; and it is

**FURTHER ORDERED** this Order will dissolve the earlier of: (1) 14 days from the date in which this Order becomes effective, unless extended by the Court for good cause; or (2) a future order by this Court.

DATED this 14th day of August, 2013.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge